# EXHIBIT "1"

Case 1:06-cv-00271-GK    Document 6-2    Filed 02/27/2006    Page 1 of 14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTHONY SHAFFER | * | |
| 1920 N Street, N.W. | * | |
| Suite 300 | * | |
| Washington, D.C. 20006 | * | |
| | * | |
| and | * | |
| | * | |
| J.D. SMITH | * | |
| 1920 N Street, NW | * | |
| Suite 300 | * | |
| Washington, D.C. 20006 | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| DEFENSE INTELLIGENCE AGENCY | * | |
| Washington, D.C. 20340-5100 | * | Civil Action No. 06-271 (GK) |
| | * | |
| and | * | |
| | * | |
| DEPARTMENT OF DEFENSE | * | |
| Washington, D.C. 20301 | * | |
| | * | |
| and | * | |
| | * | |
| DEPARTMENT OF THE ARMY | * | |
| 104 Army Pentagon | * | |
| Washington, D.C. 20310-0104, | * | |
| | * | |
| and | * | |
| | * | |
| GEORGE PEIRCE, individually and in his | * | |
| professional capacity as | * | |
| GENERAL COUNSEL | * | |
| DEFENSE INTELLIGENCE AGENCY | * | |
| Washington, D.C. 20340-5100 | * | |
| | * | |
| and | * | |
| | * | |

| | |
|---|---|
| ROBERT H. BERRY, JR., individually<br>and in his professional capacity as<br>PRINCIPAL DEPUTY GENERAL<br>COUNSEL, DEFENSE INTELLIGENCE<br>AGENCY<br>Washington, D.C.  20340-5100 | *<br>*<br>*<br>*<br>*<br>*<br>* |
| and | *<br>* |
| WILLIAM J. HAYNES, II, ESQ.<br>GENERAL COUNSEL<br>DEPARTMENT OF DEFENSE<br>Washington, D.C.  20301 | *<br>*<br>*<br>*<br>* |
| and | *<br>* |
| TOM TAYLOR<br>SENIOR DEPUTY GENERAL COUNSEL<br>DEPARTMENT OF THE ARMY<br>104 Army Pentagon<br>Washington, D.C. 20310-0104 | *<br>*<br>*<br>*<br>*<br>* |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>FIRST AMENDED COMPLAINT</u>**

NOW COME plaintiffs Anthony Shaffer and J.D. Smith, by and through undersigned counsel, to bring this action for injunctive and other declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the All Writs Act, 28 U.S.C. § 1651, and the U.S. Constitution, against defendants Defense Intelligence Agency ("DIA"), Department of Defense ("DoD"), Department of the Army ("Army") and George Peirce, General Counsel, DIA, in his individual and professional capacity, Robert Berry, Jr., Principal Deputy General Counsel, DIA, in his individual and professional capacity, William Haynes, II, General Counsel, DOD, and Tom Taylor, Senior Deputy General Counsel, Army.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Anthony Shaffer ("Shaffer") is a civilian employee of the DIA and a Lieutenant Colonel in the U.S. Army Reserves. He was a team member of the DoD effort designated "ABLE DANGER"

4. J.D. Smith ("Smith") is a defense contractor. He served as a contractor who performed work for the DoD effort designated "ABLE DANGER".

5. Defendant DIA is an agency as defined by 5 U.S.C. § 701 and is the employer of Shaffer. The DIA's actions are responsible for the harm imposed upon Shaffer and Smith.

6. Defendant DoD is an agency as defined by 5 U.S.C. § 701. The DoD's actions or inactions are responsible for the harm imposed upon Shaffer and Smith.

7. Defendant Army is an agency as defined by 5 U.S.C. § 701. The Army's actions or inactions are responsible for the harm imposed upon Shaffer and Smith

8. At all times relevant to the facts in this case, defendant George Peirce ("Peirce") serves as the DIA's General Counsel. His actions, both in his personal and professional capacity, are responsible for the harm imposed upon Shaffer and Smith.

9. At all times relevant to the facts in this case, defendant Robert H. Berry, Jr., ("Berry") serves as the DIA's Principal Deputy General Counsel. His actions, both in his personal and professional capacity, are responsible for the harm imposed upon Shaffer and Smith.

10. At all times relevant to the facts in this case, defendant William Haynes, II, ("Haynes") serves as the General Counsel, DOD. His actions, or inactions, are responsible for the harm imposed upon Shaffer and Smith.

11. At all times relevant to the facts in this case, defendant Tom Taylor ("Taylor") serves as the Senior Deputy General Counsel, Army. His actions, or inactions, are responsible for the harm imposed upon Shaffer and Smith.

**FACTS**

12. The plaintiffs performed certain duties in association with a Department of Defense program code named ABLE DANGER which included both classified and unclassified components.

13. ABLE DANGER was a United States Special Operations Command military intelligence program under the command of the U.S. Special Operations Command ("SOCOM"). It was created as a result of a directive from the Joint Chiefs' of Staff in early October 1999 by the chairman of the Joint Chiefs of Staff, Hugh Shelton, to develop an Information Operations Campaign Plan against transnational terrorism, specifically al-Qaeda.

14. Upon information and belief, ABLE DANGER identified the September 11, 2001 attack leader Mohamed Atta, and three of the 9/11 plot's 19 hijackers, as possible members of an al Qaeda cell linked to the 1993 World Trade Center Attacks or its

participants. This information was contained, among other locations, on a chart prepared by Smith and turned over to Shaffer for use by ABLE DANGER. Although no specific criminal or terrorist activity was detected, these individuals were viewed as having associational links with known terrorists. No copies of the chart have been located.

15. ABLE DANGER used all information legally collected under the rule of law. All publicly obtained information was approved after a legal review of SOCOM lawyers. However, the information was ordered destroyed and this was accomplished by the Spring of 2001, after ABLE DANGER had been officially and formally shut down for unknown reasons. Additionally, upon information and belief, in or around Spring 2004, the DIA improperly destroyed ABLE DANGER and other files that Shaffer had maintained in his DIA work space.

16. If the primary assertion of the ABLE DANGER members is true, the early identification of the four hijackers by ABLE DANGER contradicts the official conclusion of the 9/11 Commission that American intelligence agencies had not identified Atta as a potential terrorist prior to the 9/11 attack.

17. Thus it is no surprise that former members of the 9/11 Commission, most notably former Senator Slade Gorton, who has appeared on numerous television programs on this matter, have publicly challenged these assertions and, at times, implicitly or explicitly called those who have claimed to the identification of Atta pre-9/11 as liars. Two other 9/11 Commission members, Timothy J. Roemer and John F. Lehman, both have claimed not to have received any information on Able Danger. Lee H. Hamilton, former Vice Chair of the 9/11 Commission, and Al Felzenberg, a former spokesman for the 9/11

Commission, both denied that the 9/11 Commission had any information on the identification of Mohammed Atta prior to the attacks.

18. However, Shaffer asserts that in October 2003, in Bagram, Afghanistan, he told Philip D. Zelikow, the Executive Director of the 9/11 Commission, and three other 9/11 Commission staff members, that ABLE DANGER had identified 9/11 hijackers, "to include Atta". Although Zelikow told Shaffer that what he had said was "very important" and provided Shaffer his business card and asked him to call the Commission upon Shaffer's return to the United States, when Shaffer did so in January 2004, his attempts to establish recontact with the Commission were rebuffed. Instead Shaffer was told that the Commission had all the information it needed concerning ABLE DANGER from the Pentagon.

19  In July 2004, Navy Captain Scott Phillpott independently met with 9/11 Commission staff and also informed them that ABLE DANGER had identified several 9/11 hijackers pre-9/11.

20. Not one mention of ABLE DANGER can be found in the 9/11 Commission's final report.

21. On August 12, 2005, Thomas H. Kean and Lee H. Hamilton, former Chair and Vice Chair of the 9/11 Commission, issued a statement in response to media inquiries about the Commission's investigation of ABLE DANGER. They now stated the Commission had been aware of the Able Danger program, and requested and obtained information about it from the DoD, but none of the information provided had indicated the program had identified Atta or other 9/11 hijackers. They also confirmed that Captain Phillpott had provided them information that Atta had been identified prior to the attacks

but that it was just days before the Commission's report was scheduled to be released. However, at one point ABLE DANGER was described by a former 9/11 Commission senior staffer as "historically insignificant."

22. Since in or around Spring/Summer 2005, Shaffer has provided briefings on ABLE DANGER and/or the retaliation he has suffered from the DIA to several Congressional committees and their staff.

23. By letter dated August 30, 2005, the plaintiffs' counsel requested that the defendants officially permit their access to relevant classified information concerning ABLE DANGER in order to represent Shaffer, particularly in relation to the need to handle classified congressional and DoD inquiries. This request was reiterated by letter dated August 31, 2005, due to a formal invitation for Shaffer to testify before the United States Senate.

24. By letter dated September 16, 2005, defendant Peirce responded on behalf of all defendants denying the undersigned counsel's request for access to classified information. Upon information and belief, defendant Berry participated in drafting and formulating the defendants' response. Peirce, as General Counsel, does not possess the authorization or qualifications to render clearance determinations under the circumstances.

25. In September 2005, both Shaffer and Smith were scheduled to testify before the United States Senate Judiciary Committee to discuss their involvement with ABLE DANGER. Shaffer submitted proposed testimony to the DoD for classification review, but the DoD has never responded. In any event, the defendants claimed all information concerning ABLE DANGER was classified and refused to consent to allow the

7

testimony. Their undersigned counsel, Mark S. Zaid, testified in their place on September 21, 2005.

26. Just days before Shaffer was to testify before the U.S. Senate Judiciary Committee, the DIA revoked his security clearance amidst allegations of criminal conduct and unfavorable credibility determinations. The DIA specifically asserted that Shaffer had lied during appeal proceedings. Upon information and belief, the revocation of Shaffer's security clearance, particularly the speed at which it occurred, was, in part or in whole, in retaliation for Shaffer's public and/or private comments concerning ABLE DANGER. Additionally, as part of Shaffer's security clearance adjudication process, the undersigned counsel was provided access to classified information.

27. By letter dated February 2, 2006, the plaintiffs renewed their request to share relevant classified information with their counsel, particularly in order to appear in a closed, classified House of Representative's hearing.

28. By letter dated February 14, 2006, defendant Peirce responded on behalf of all defendants denying the undersigned counsel's request for access to classified information. Upon information and belief, defendant Berry participated in drafting and formulating the defendants' response. Peirce, as DIA General Counsel, does not possess the authorization or qualifications to render clearance determinations under the circumstances.

29. On February 15, 2006, Shaffer and Smith testified before two Subcommittees of the House Armed Services regarding ABLE DANGER and related programs. Shaffer desired to be represented by counsel in the closed session, which was allegedly to include classified testimony. He publicly commented during his open session testimony (and

8

reiterated during the closed session) that he was not going to be permitted counsel in the closed session and that this fact placed him in potential legal jeopardy. Defendants refused to permit undersigned counsel access to classified information so as to permit them to attend the closed, classified portion of the hearing and have therefore deprived Shaffer of his right to assistance of counsel during said hearings. Although the Subcommittees did not issue subpoenas, it was made clear that were Shaffer or Smith to decline to appear voluntarily they would be compelled to do so.

30. At the last minute Smith was not permitted to testify during the closed, classified session on February 15, 2006, so his access to counsel was no longer an issue. However, he will likely be called as a witness in classified sessions (and at one point in or around Spring 2000, unknown federal agents appeared at his workplace and confiscated materials claiming they were now classified) in the future so the dispute remains live.

31. Upon information and belief, additional Congressional hearings are to be held including by, but not limited to, the House International Relations Committee and the Senate Judiciary Committee. If Shaffer or Smith decline to appear voluntarily they would be compelled to do so by virtue of a subpoena.

32. In addition to congressional meetings, the DoD Office of Inspector General is currently conducting an investigation into ABLE DANGER in general and specifically allegations of the DIA's retaliation against Shaffer. Both Shaffer and Smith have been interviewed. The undersigned counsel was forbidden to be present during Shaffer's classified interview notwithstanding Shaffer's desire to be represented by legal counsel.

33. Shaffer and Smith's appearances before congressional committees and Government investigators are under oath or are subject to criminal penalty pursuant to

9

statute if false or inconsistent statements are made. Both Shaffer and Smith's credibility has been called into question and, based on the official views of the defendants and other current or former Government representatives, the claims they continue to make are nothing less than intentionally false. Therefore, the plaintiffs could potentially face prosecution should their answers be held to be either false or inconsistent thereby requiring representation throughout every aspect of these matters.

## FIRST CAUSE OF ACTION
## (FIRST AMENDMENT RIGHT TO COUNSEL)

34. The plaintiffs repeat and reallege the allegations contained in paragraphs 12 through 33 above, inclusive.

35. The defendants have denied the plaintiffs' access to counsel where classified information is concerned. Based on the defendants' position neither plaintiff is permitted to share classified information with counsel, nor have counsel present to represent and protect their interests during classified discussions. Should the plaintiffs share classified information with counsel they would be subject to civil and/or criminal penalties.

36. The plaintiffs have determined that their counsel has the requisite need-to-know relevant classified information pertaining to ABLE DANGER that is essential to the protection of their legal rights.

37. The defendants' denial of classified access to plaintiffs' counsel constitutes an effective denial of counsel and implicates and violates the plaintiffs' protected rights under the First Amendment.

38. The plaintiffs' counsel both have a need-to-know relevant classified information pertaining to ABLE DANGER and have been in the past, and would be now, favorably adjudicated as eligible to receive the specific relevant classified information.

39. The plaintiffs are continually requested to participate in classified discussions with members of Congress and/or their staff, as well as cooperate in official government investigations, and they prefer/need to do so with counsel in order to properly and effectively ensure protection of their legal interests.

## SECOND CAUSE OF ACTION
## (VIOLATION OF INTERNAL REGULATIONS)

40. The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 33 above, inclusive.

41. The defendants have denied the plaintiffs' access to counsel where classified information is concerned. Based on the defendants' position neither plaintiff is permitted to share classified information with counsel, nor have counsel present to represent and protect their interests during classified discussions. Should the plaintiffs share classified information with counsel they would be subject to civil and/or criminal penalties.

42. The plaintiffs have determined that their counsel has the requisite need-to-know relevant classified information pertaining to ABLE DANGER that is essential to the protection of their legal rights.

43. The defendants' denial of classified access to plaintiffs' counsel constitutes an effective denial of counsel and was in violation or inconsistent with their existing regulations.

44. The plaintiffs' counsel both have a need-to-know relevant classified information pertaining to ABLE DANGER and have been in the past, and would be now, favorably adjudicated as eligible to receive the specific relevant classified information.

45. The plaintiffs are continually requested to participate in classified discussions with members of Congress and/or their staff, as well as cooperate in official government

investigations, and they prefer/need to do so with counsel in order to properly and effectively ensure protection of their legal interests.

WHEREFORE, Plaintiffs seek judgment against Defendants.

(1) Issue a permanent injunction to block the defendants from restraining the plaintiffs' disclosure to their counsel of relevant classified information concerning ABLE DANGER;

(2) Declare that the plaintiffs possess a First Amendment right to communicate with their counsel to include discussions involving classified information;

(3) Declare that the defendants violated the Administrative Procedure Act and their internal regulations governing the granting of access to counsel to classified information;

(4) Declare that the plaintiffs possess the ability to reach need-to-know decisions regarding the disclosure of relevant classified information;

(5) Declare that the plaintiffs' counsel possess a need-to-know relevant classified information concerning ABLE DANGER;

(6) Require, if necessary, the defendants to conduct expedited background investigations of the plaintiffs' counsel to determine eligibility of access to certain levels of classified information;

(7) Award the plaintiffs the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(8) grant such other relief as the Court may deem just and proper.

Date:   February 27, 2006

                                Respectfully submitted,

                                /s/

                              _____

Mark S. Zaid, Esq.
DC Bar #440532
Krieger & Zaid, PLLC
1920 N St., N.W.
Suite 300
Washington, D.C. 20006
(202) 454-2809