## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTHONY SHAFFER, et al.      )
     )
     )
         Plaintiffs,      )      Civil Action No. 06-271 (GK)
     )
         v.      )
     )
DEFENSE INTELLIGENCE AGENCY,      )      (no next-scheduled Court deadline)
et al.      )
     )
         Defendants.      )
     )

### DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(1) and 12(b)(5) of the Federal Rules of Civil Procedure,

defendants respectfully move to dismiss this action. The grounds for this motion are set forth in

the memorandum submitted herewith.

Dated: April 7, 2006.

                 Respectfully submitted,

                 PETER D. KEISLER
                 Assistant Attorney General

                 KENNETH L. WAINSTEIN
                 United States Attorney

                 VINCENT M. GARVEY
                 Deputy Branch Director

                 _____/s/_____
                 KAREN K. RICHARDSON
                 Texas Bar #785610
                 Senior Counsel

U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 6126
Washington, D.C. 20001
Telephone: (202) 514-3374
Facsimile: (202) 616-8460

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTHONY SHAFFER, et al. | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 06-271 (GK) |
| | ) |
| v. | ) |
| | ) |
| DEFENSE INTELLIGENCE AGENCY, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

KAREN K. RICHARDSON, Texas Bar #785610
Senior Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 6126
Washington, D.C. 20001
Telephone: (202) 514-3374
Facsimile: (202) 616-8460

Dated: April 7, 2006

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 7

I.   THIS COURT DOES NOT HAVE JURISDICTION OVER THIS
     ACTION BECAUSE PLAINTIFFS' CLAIMS ARE NOT RIPE AND
     PLAINTIFFS LACK STANDING ....................................................................... 7

     A.   Standard of Review under F.R.C.P. 12(b)(1) ............................................ 7

     B.   The Court Lacks Jurisdiction to Review Plaintiffs' Claims .................... 8

          1.   Plaintiffs' Claims Are Not Ripe for Adjudication ........................ 9

          2.   Plaintiffs Lack Standing To Bring Their Claims ........................ 13

II.  PLAINTIFFS HAVE FAILED TO PROPERLY SERVE THE
     DEFENDANTS ................................................................................................. 15

CONCLUSION .................................................................................................................. 16

## **TABLE OF AUTHORITIES**

**CASES**                                                    Page(s)

Abbott Laboratories. v. Gardner, 387 U.S. 136 (1967) ................................................. 9

Allen v. Wright, 468 U.S. 737 (1984) ...................................................................... 8

Alliance for Democracy v. FEC, 362 F. Supp. 2d 138 (D.D.C. 2005) ......................................... 8

Artway v. Attorney Gen'l of the State of New Jersey, 81 F.3d 1235 (3d Cir. 1996) ................... 9

Assassination Archives & Research Center v. CIA, 48 F. Supp.2d 1 (D.D.C. 1999) ................. 5

Bender v. Williamsport Area Sch. Dist., 475 U.S. 534 (1986) .................................................... 3

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) ...................................................... 14

Coalition for Underground Expansion v. Mineta, 333 F.3d 193 (D.C. Cir. 2003) ....................... 8

Coffman v. Breeze Corps., 323 U.S. 316 (1945) ......................................................... 9

Department of Navy v. Egan, 484 U.S. 518 (1988) .................................................... 14

Deutsch v. United States Department of Justice, 881 F. Supp. 49 (D.D.C. 1995) ....................... 3

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) .............................. 8

Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961 (D.C. Cir. 1995) ............................. 8

Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp. 2d 9 (D.D.C. 2001) ........ 7, 8

Herbert v. National Academy of Sciences, 974 F.2d 192 (D.C. Cir. 1992) ................................. 8

Hohri v. United States, 782 F.2d 227 (D.C. Cir. 1986), vacated on other grounds,
        482 U.S. 64 (1987) ........................................................................................... 8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .......................................... 13, 14

National Treasury Employees Union v. United States, 101 F.3d 1423 (D.C Cir. 1996) ............ 10

Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir. 1997) ................................................ 10

Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville,
    508 U.S. 656 (1993) ......................................................................................... 14

Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15 (D.D.C. 1998) .................. 8

Raines v. Byrd, 521 U.S. 811 (1997) ........................................................................................ 14

Rio Grande Pipeline Co. v. FERC, 178 F.3d 533 (D.C. Cir. 1999) ...................................... 10, 13

Robertson v. Merola, 895 F. Supp. 1 (D.D.C. 1995) ................................................................... 3

Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26 (1976) .................................... 8

State Farm Mutual Automobile Ins. Co. v. Dole, 802 F.2d 474 (D.C. Cir. 1986) ............ 9, 10, 13

Stillman v. Central Intelligence Agency, 319 F.3d 546 (D.C. Cir. 2003) ................................... 2

Texas v. United States, 523 U.S. 296 (1998) ............................................................................... 9

Valley Forge Christian College v. Americans United for Separation of Church and State,
    Inc., 454 U.S. 464 (1982) ................................................................................. 8

## STATUTES AND REGULATIONS

5 U.S.C. § 701 ............................................................................................................................ 1

32 C.F.R. § 154.16 ...................................................................................................................... 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 4(i)(1)(A) & (B) ............................................................................................... 15

Fed. R. Civ. P. 4(i)(2)(A) ......................................................................................................... 15

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 7

Fed. R. Civ. P. 12(b)(5) ......................................................................................................... 3, 16

## INTRODUCTION

Plaintiffs Anthony Shaffer, a current employee of the Defense Intelligence Agency ("DIA"), and J.D. Smith, a former government contractor, have sued the DIA, the Department of Defense ("DoD"), the Department of the Army ("Army") and various government officers in their official capacities alleging that the DIA's General Counsel's determination that plaintiffs' counsel did not have a need-to-know classified information for purposes of representing them at congressional hearings was a violation of plaintiffs' purported "right to counsel" under the First Amendment and contrary to defendants' internal regulations in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. Plaintiffs speculate, without foundation, that Congress will hold future hearings about ABLE DANGER, a top secret, compartmented military program, and that they will be compelled to testify at those hearings in closed classified sessions. They further allege that they will suffer injury if they testify without their counsel being privy to the classified information regarding the government's top secret program. Specifically, they assert that they need their counsel to have access to such information because any future testimony before Congress would be "under oath" and "subject to criminal penalty pursuant to statute if false or inconsistent statements are made." See First Amended Complaint, ¶ 33. In other words, plaintiffs apparently believe that they need counsel to avoid committing perjury if they are, in fact, called as fact witnesses before Congress. Plaintiffs seek a declaration that plaintiffs' counsel possess a need-to-know classified information regarding ABLE DANGER and injunctive relief requiring defendants to conduct an expedited background investigation to determine plaintiffs' counsel's eligibility of access to classified information. First Amended Complaint, pg. 12.

An individual has no cognizable right under the First Amendment to have his private counsel be given access to classified information for purposes of representing him when he appears as a fact witness at non-adversarial congressional hearings and defendants' denial of plaintiffs' request for attorney access was consistent with DoD regulations. However, this Court need not, and should not, consider the merits of plaintiffs' claims to the contrary because plaintiffs' claims are not properly before the Court. Plaintiffs' claims suffer several fatal flaws. First, plaintiffs' claims are not ripe for adjudication and plaintiffs have no standing to bring their claims. No future congressional hearings have been scheduled regarding ABLE DANGER. The mere fact that hearings have been held in the past is no basis for issuing an advisory opinion about future hearings that may never take place. Nor can plaintiffs show that they would be requested, much less compelled, to testify in the event additional Congressional hearings about ABLE DANGER are held. Finally, plaintiffs do not allege that Congress will require <u>classified</u> testimony from plaintiffs about ABLE DANGER. Indeed, given the fact that one of the plaintiffs, J.D. Smith, was never assigned to work on classified aspects of the ABLE DANGER program, there is no basis to conclude that he will be compelled to testify as to classified information, obviating any purported need for his counsel to be cleared for classified access. Unless and until, Congress actually <u>compels</u> plaintiffs to testify about <u>classified</u> matters, this Court should avoid issuing an advisory opinion on matters that might never occur and should dismiss plaintiffs' claims for lack of standing. This is especially true given that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." <u>Stillman v. Central Intelligence Agency</u>, 319 F.3d 546, 548 (D.C. Cir. 2003) (internal quotations omitted).

This Court should also dismiss plaintiffs' claims because neither the defendant agencies nor their officials have been properly served. When agencies or officers of the United States are sued, the Federal Rules of Civil Procedure mandate that the United States Attorney General, the United States Attorney and each federal agency and officer be served with a copy of the summons and complaint. Because plaintiffs have not properly served defendants, their claims must be dismissed under Rule 12(b)(5) of the Federal Rules of Civil Procedure.

For these reasons and as set forth more fully below, defendants respectfully request the Court grant defendants' motion and dismiss this action.[1]

## FACTUAL BACKGROUND

Plaintiff Anthony Shaffer is a civilian employee of the DIA. See First Amended

---

[1]    Plaintiffs state that defendants Peirce and Berry are named in their "personal and professional capacity." First Amended Complaint, ¶¶ 8 & 9. However, the mere use of such terms as "personal" or even "individual capacity" is not enough to transform an official capacity action into an individual capacity action. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 543 (1986) (the relevant inquiry is whether the relief is sought against the defendants in their individual, as opposed to official capacities). Here, the relief plaintiffs seek is not relief against defendants Peirce and Berry individually, but rather injunctive and declaratory relief seeking to require defendants to provide plaintiffs' counsel with access to classified information relating to ABLE DANGER. See First Amended Complaint, pgs. 2, 12. In any event, there has been no service on defendants Peirce or Berry in their individual capacities, either in person, by certified mail or otherwise. See Declaration of George B. Peirce ("Peirce Decl."), ¶ 4 (Ex. A); Declaration of Robert H. Berry Jr. ("Berry Decl."), ¶ 4 ( Ex. B). Plaintiffs' failure to serve the two individually named defendants would deprive this Court of personal jurisdiction over any claims plaintiffs may have against defendants Peirce and Berry in their individual capacities. See Robertson v. Merola, 895 F. Supp. 1, 3 (D.D.C. 1995) (proper service of process is necessary to obtain personal jurisdiction over defendants named in their individual capacities); Deutsch v. United States Department of Justice, 881 F. Supp. 49, 52 (D.D.C. 1995) (same). Had Mr. Peirce and Mr. Berry been properly served, they have a number of defenses available that would preclude any of the individual claims asserted against them, including lack of personal jurisdiction, improper venue, and qualified immunity, all of which are preserved. Accordingly, because this Complaint, properly construed, related only to defendant officials in their official capacities, and no service has been made on the officials in their individual capacities, this motion is brought on behalf of defendants in their official capacities only.

Complaint, ¶ 3. As part of Mr. Shaffer's employment, Mr. Shaffer was assigned to work on a program entitled ABLE DANGER, a program that included both classified and unclassified components. See First Amended Complaint, ¶ 12. ABLE DANGER was a military intelligence program under the command of the U.S. Special Operations Command. Id., ¶ 13. Plaintiff J.D. Smith is a former defense contractor with Orion Scientific Systems. See First Amended Complaint, ¶ 4 & fn. 1 in Letter dated February 2, 2006 (attached as Ex. C) and referenced by plaintiffs in ¶ 27 of First Amended Complaint. Mr. Smith performed certain duties relating to the government program, ABLE DANGER. See First Amended Complaint, ¶ 12. Mr. Smith's work with ABLE DANGER was not classified. Id., ¶ 27 (February 2, 2006 letter from Mark Zaid to defendants indicating that J.D. Smith's "participation with ABLE DANGER was unclassified.").

On or before August 30, 2005, Mr. Shaffer received an invitation to testify before the United States Senate regarding ABLE DANGER. See First Amended Complaint, ¶ 23. By letter dated August 30, 2005 to defendants Haynes, Taylor and Peirce, plaintiffs' counsel requested that they be granted access to classified information pertaining to ABLE DANGER on the basis of their representation of Mr. Shaffer. Id., ¶ 23 (letters dated August 30, 2005 and August 31, 2005 attached as Ex. D & E).

By letter dated September 16, 2005, defendant George Peirce, as General Counsel for the DIA, responded to plaintiffs' counsel's request. See First Amended Complaint, ¶ 24 (letter dated September 16, 2005 attached hereto as Ex. F). Mr. Peirce declined to certify plaintiffs' counsel, Mark Zaid and Roy Krieger, for access to classified information regarding ABLE DANGER. Id. (letter dated September 16, 2005). As Mr. Peirce explained, the DoD regulation governing

outside counsel access provides that attorneys representing DoD personnel in litigation may be granted certain access to classified information where such access is necessary for the adequate representation of the client. Id.; see also Department of Defense, Personnel Security Program, C.3.4.4.6 (published as 32 C.F.R. § 154.16). The regulation requires as a prerequisite to the granting of such access, a "'certification by the General Counsel of the DoD Component involved in the litigation that access to specified classified information, on the part of the attorney concerned, is necessary to adequately represent his or her client.'" Letter dated September 16, 2006 referenced in First Amended Complaint, ¶ 24 (Mr. Peirce quoting DoD regulation 32 C.F.R. § 154.16 (C3.4.4.6)). Because plaintiffs' counsel's representation of Mr. Shaffer did not involve litigation as contemplated by 32 C.F.R. § 514.16 and DoD regulations do not otherwise allow for granting clearances to private counsel, defendant Peirce determined that he could not certify to DIA security officials that plaintiffs' counsel had a need for access to classified information. See First Amended Complaint, ¶ 24 (letter dated September 16, 2005, Ex. F). In setting forth his reasons for not certifying a "need to know" for plaintiffs' counsel, Mr. Peirce explained that "you are representing your clients in connection with requests from Members of Congress or their staffs for your clients simply to provide factual information concerning their knowledge of ABLE DANGER." Id. (September 16, 2005 letter at 2).[2]

Defendants denied Mr. Shaffer consent to meet with Congress on official DoD matters regarding

---

[2]  In addition to making that need-to-know determination, Mr. Peirce also noted that Mr. Zaid had been found by a District Judge in Assassination Archives & Research Center v. CIA, 48 F. Supp.2d 1 (D.D.C. 1999), to have violated a confidentiality agreement entered into with the CIA and the Department of Justice for the purpose of protecting certain confidential CIA information from public disclosure. See First Amended Complaint, ¶ 24 (letter dated September 16, 2005 at p.3).

ABLE DANGER.  See First Amended Complaint, ¶ 25.  On September 21, 2005, plaintiffs'

counsel, Mark Zaid, testified before Congress in Mr. Shaffer's stead.  Id.

The House of Representatives scheduled a hearing involving ABLE DANGER for

February 15, 2006.  See First Amended Complaint, ¶ 27 (referencing letter dated February 2,

2006).  By letter dated February 2, 2006, plaintiffs' counsel renewed their request to obtain

classified information from their clients, this time for the purpose of representing both Mr.

Shaffer and J.D. Smith at the hearing.  Id. (Letter attached as Ex.  C).  In that letter, Mr. Zaid

acknowledged that J.D. Smith's participation in the ABLE DANGER program was unclassified,

but nevertheless requested access to classified information "so that we may appear to advise him

during the same hearing."  Id.; Letter dated February 2, 2006, n. 1, Ex.  C.  By letter dated

February 14, 2006, defendant Peirce responded to the renewed request, reiterating that plaintiffs'

counsel did not have a need-to-know classified information in order to represent plaintiffs at the

fact-finding hearing before Congress.  See First Amended Complaint, ¶ 28 (referring to Letter

dated February 14, 2006, attached as Ex.  G).

On February 15, 2006, Mr. Shaffer was allowed to testified in both open and closed

hearings before two House Armed Services Subcommittees.  First Amended Complaint, ¶ 29.

Mr. Shaffer appeared voluntarily at the hearings; he was not compelled to testify.  See Transcript

of TRO proceedings in this case (Docket #9), at 10-11.  Mr. Smith testified only in the open

hearings.  First Amended Complaint, ¶ 30.  His testimony, too, was voluntary.  See Transcript of

TRO proceedings at 10-11.

DIA's Office of Congressional Affairs is informed by Congress whenever hearings have

been scheduled on matters pertaining to ABLE DANGER.  See Salvatore M.  Ferro ("Ferro

Decl.") ¶ 2 (attached as Ex. H). To date, the Office of Congressional Affairs has not been notified that any congressional hearings have been scheduled about ABLE DANGER. Id., ¶ 3.

The DoD Office of Inspector General ("OIG") is currently conducting an investigation into Mr. Shaffer's allegations of reprisal by DIA and allegations that government officials acted improperly with respect to how they used ABLE DANGER information. See Declaration of Donald Horstman ("Horstman Decl.") (attached hereto as Ex. I), ¶ 6. OIG has conducted approximately seventy (70) interviews and retrieved hundreds of documents in the course of their investigation. Id., ¶ 7. Plaintiffs Shaffer has been interviewed by OIG investigators twice; Mr. Smith once. Id., ¶¶ 8-9. During all of the OIG interviews with plaintiffs Shaffer and Smith, no classified information about ABLE DANGER was discussed and their counsel were allowed to be present. Id. The OIG will likely interview Mr. Shaffer again for purposes of its investigation. See Horstman Decl., ¶ 10. Like the past interviews, OIG does not intend to have discussions with Mr. Shaffer about classified information at any future interviews and his counsel may be present. Id. The OIG does not intend to interview Mr. Smith at any time in the future for purposes of its investigation. Id., ¶ 11.

### ARGUMENT

## I. THIS COURT DOES NOT HAVE JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFFS' CLAIMS ARE NOT RIPE AND PLAINTIFFS LACK STANDING

### A. Standard of Review under F.R.C.P. 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. See Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp. 2d  9, 13

(D.D.C. 2001); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C.

1998). A 12(b)(1) motion "imposes on the court an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority," Grand Lodge, 185 F. Supp. 2d at 13.

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(1), the allegations of the complaint must be construed in favor of

the pleader. See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other

grounds, 482 U.S. 64 (1987). However, the Court may consider materials outside the pleadings

to determine whether subject matter jurisdiction in fact exists. See, e.g., Herbert v. National

Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); EEOC v. St. Francis Xavier Parochial

Sch., 117 F.3d 621, 624-25, 625 n.3 (D.C. Cir. 1997); accord Alliance for Democracy v. FEC,

362 F. Supp. 2d 138, 142 (D.D.C. 2005); Coalition for Underground Expansion v. Mineta, 333

F.3d 193, 198 (D.C. Cir. 2003).

**B.    The Court Lacks Jurisdiction to Review Plaintiffs' Claims**

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual

'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). This is a "bedrock

requirement." Valley Forge Christian College v. Americans United for Separation of Church and

State, Inc., 454 U.S. 464, 471 (1982). As the Supreme Court stated in Simon v. Eastern Ky.

Welfare Rights Organization, 426 U.S. 26, 37 (1976), "[n]o principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of federal-

court jurisdiction to actual cases or controversies." See also Federal Express Corp. v. Airline

Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any

matter unless it involves a case or controversy.").

-8-

Plaintiffs have failed to establish two of the primary components of the "case or controversy" requirement: that their claims be ripe for adjudication and that they have standing to bring the lawsuit. Each of these jurisdictional limits will be addressed in turn.

## 1.   Plaintiffs' Claims Are Not Ripe for Adjudication.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Laboratories. v. Gardner, 387 U.S. 136, 148-49 (1967). As the Supreme Court has stressed, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotation marks and citations omitted). It is a well-settled principle that Courts should not pass on issues of constitutionality until it is necessary to do so to preserve the rights of the parties. Coffman v. Breeze Corps., 323 U.S. 316, 324-325 (1945). Thus, "[c]ourts are particularly vigilant to ensure that cases are ripe when constitutional questions are at issue." Artway v. Attorney Gen'l of the State of New Jersey, 81 F.3d 1235, 1249 (3d Cir. 1996).

In deciding whether judicial review is proper, a court must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Texas v. United States, 523 U.S. at 300-01 (quoting Abbott Laboratories, 387 U.S. at 149). Under the fitness prong of this test, a court should take into account "any institutional interests that either the court or the agency may have for postponing review." State Farm Mutual Automobile Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C. Cir. 1986). It may determine, for example, that its deliberations would "benefit from letting the question arise in some more concrete and final form . . . or that resolution of the dispute is likely to prove

unnecessary." Id. at 479 (citations omitted). See also Rio Grande Pipeline Co. v. FERC, 178 F.3d 533, 540 (D.C. Cir. 1999) (the fitness inquiry asks if a case "'presents a concrete legal dispute [and] no further factual development is essential to clarify the issues . . . .'"). Next, the court should consider "the countervailing interests of the challenging party in obtaining a prompt resolution of their dispute." State Farm, 802 F.2d at 479. To outweigh an institutional interest in deferring review, a plaintiff must demonstrate that any delay in judicial resolution will impose a hardship that is "immediate, direct, and significant." Id. at 479-80.[3]

Plaintiffs' claims here are not ripe for adjudication. Both plaintiffs' First Amendment and APA claims are based on the mere supposition that plaintiffs will suffer some type of injury by testifying under oath at Congressional hearings or by being interviewed by investigators of the DoD's Office of Inspector General ("OIG") without their counsel being privy to classified information regarding ABLE DANGER. As relief for both claims, plaintiffs seek to compel defendants to give their counsel access to classified information about ABLE DANGER so that counsel can be present with them during closed, classified congressional hearings or with the OIG investigators.[4] The fundamental problem with plaintiffs' claims is that plaintiffs cannot and have not made any allegation that additional congressional hearings regarding ABLE DANGER have actually been scheduled. Plaintiffs merely state that "[u]pon information and belief,

---

[3] The hardship inquiry under ripeness review "overlaps with the 'injury in fact' facet of the standing doctrine." Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997). See also National Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending").

[4] Notably, the relief plaintiffs seek is forward looking. They are not seeking redress for any past injury from having testified in classified hearings previously held.

-10-

additional Congressional hearings are to be held." First Amended Complaint, ¶ 31. Plaintiffs do not allege any facts indicating that Congressional hearings have been formally scheduled, much less when those purported hearings are to held.[5]

Nor do plaintiffs allege that they already have been requested, much less subpoenaed to testify at any future hearings. They merely state that "[i]f Shaffer or Smith decline to appear voluntarily they *would* be compelled to do so by virtue of a subpoena," id., without indicating that they had in fact been requested to testify, but declined to do so (to protect themselves from the "injury" they will purportedly suffer if not allowed counsel to be present) and that in fact Congress responded to their refusal to testify by issuing subpoenas to compel their testimony. There can be no "injury in fact" if plaintiffs are not subpoenaed to testify, because plaintiffs can merely choose not to testify to avoid any potential "injury"caused by their giving untruthful testimony.

Most telling, plaintiffs do not allege that they have been asked to testify at any future hearings on classified matters. If Congress were to ask them to testify in a non-classified context about ABLE DANGER, there is no impediment to having their counsel present at any future hearings (as they have had in the past). The absence of any allegation that Congress will compel their "classified," as opposed to "unclassified," testimony underlines the speculative nature of plaintiffs' claims.

As for plaintiff Smith, plaintiffs' allegations provide no basis to conclude that he is in a

---

[5] Indeed, if any classified hearings regarding ABLE DANGER are scheduled, Pentagon officials would be the first to know. As a matter of course, Congress notifies the Office of Congressional Affairs within DIA whenever hearings are to be held on an issue involving ABLE DANGER. As of the time of this filing, DIA's Office of Congressional Affairs has not been notified of any such scheduled hearings. See Ferro Decl., ¶¶ 2&3, Ex. H.

position to testify as to classified matters on ABLE DANGER even if future hearings are held because he has never been authorized for access to such information in the first place (a fact that plaintiffs conveniently do not mention in their First Amended Complaint). See Letter from Mark Zaid dated February 2, 2006, referenced in First Amended Complaint, ¶ 27 (acknowledging that plaintiff Smith's participation in ABLE DANGER was unclassified). Given that Mr. Smith's counsel represents that Mr. Smith was not involved in classified aspects of ABLE DANGER, it is impossible to conceive why his "classified" testimony could be compelled by Congress in any circumstance. It is also obvious that there is no possible justification for granting Mr. Zaid or Mr. Krieger access to classified information relating to ABLE DANGER for the purpose of representing him at any hearings. Plaintiff J.D. Smith's claims should be dismissed on that basis alone.

As for plaintiff Shaffer, plaintiffs' First Amended Complaint does not contain any allegation that Mr. Shaffer will be called in the future to testify as to any classified information that he may have by virtue of his former security clearance and employment at DIA. Even if the congressional hearings that plaintiffs speculate will be held are in fact scheduled, plaintiffs do not know (nor do they allege) that the hearings will be for the purpose of discussing ABLE DANGER in a classified context.

Finally, plaintiffs cannot show that the OIG intends to interview them in the future about classified information involving ABLE DANGER during OIG's investigation of plaintiff Shaffer's reprisal allegations and ABLE DANGER. Plaintiffs merely allege that they have both been interviewed in the past.[6] First Amended Complaint, ¶ 32. Moreover, plaintiffs do not

---

[6] In those past OIG's interviews with Mssrs. Shaffer and Smith, the discussions did not involve classified information relating to ABLE DANGER and their counsel were allowed to be present.

assert that they suffered any injury resulting from their counsel not having access to classified information at those past interviews.

Plaintiffs' speculation that there *might* be future Congressional hearings or additional investigative interviews, that plaintiffs *might* be subpoenaed to testify at Congressional hearings or that classified testimony *might* be required of them is wholly insufficient to establish that their claims "present a concrete legal dispute [or that] no further factual development is essential to clarify the issues." Rio Grande Pipeline Co., 178 F.3d at 540. Nor can plaintiffs demonstrate that a delay in judicial resolution will impose a hardship on them that is "immediate, direct, and significant." State Farm, 802 F.2d at 480. That plaintiffs may want to testify before Congress about ABLE DANGER does not mean that Congress ultimately will decide to hold those hearings or wish to hear from them on classified matters. Until those facts actually come to pass, plaintiffs are merely asking this Court to render an unconstitutional advisory opinion by "deciding a case in which no injury would have occurred at all." Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992).

### 2. Plaintiffs Lack Standing To Bring Their Claims

For the same reasons that plaintiffs' claims are not ripe for adjudication, plaintiffs have no standing to bring this action. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. To satisfy standing requirements, a plaintiff must demonstrate, *inter alia*, "that he 'has sustained or is immediately in danger of sustaining some direct injury'" that is both "real and immediate"

_____

See Horstman Decl., ¶¶ 8-9, Ex. I. Likewise, if OIG interviews plaintiffs again in connection with the OIG investigation, OIG does not intend for those future interviews – like the previous ones – to require discussions about classified information. Id., ¶¶ 10-11.

and not "conjectural" or "hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02

(1983); see also Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of

Jacksonville, 508 U.S. 656, 663 (1993) (to establish standing, plaintiff must establish an "injury

in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical"). It is plaintiffs who bear the burden of establishing that they have standing to sue.

See Lujan, 504 U.S. at 561.

The standing inquiry must be "especially rigorous when reaching the merits of the dispute

would force [the judiciary] to decide whether an action taken by one of the other two branches of

the Federal Government was unconstitutional." Raines v. Byrd, 521 U.S. 811, 819-20 (1997).

Such scrutiny is particularly warranted in a case such as this one, given courts traditional

"reluctan[ce] to intrude upon the authority of the Executive in military and national security

affairs." Department of Navy v. Egan, 484 U.S. 518, 530 (1988).

As explained above, plaintiffs have failed to demonstrate that they have suffered an

injury-in-fact as a result of an action taken by defendants. Plaintiffs' assertion that future

congressional hearings might be held or that Congress would request and subpoena plaintiffs to

testify is mere speculation. Moreover, because they have not even alleged that any purported

hearings will involve classified information, plaintiffs certainly cannot show that there is an

imminent threat of injury caused by the decision not to recommend plaintiffs' counsel receive

access to classified information. Plaintiff Smith's lack of standing is even more obvious given

that his participation on the ABLE DANGER program was unclassified. Under those

circumstances, it is difficult to conceive why he would be asked, much less compelled, to testify

about classified matters in Congressional hearings or in investigative interviews.

-14-

Because plaintiffs do not seek redress for any purported past injury, and because plaintiffs fail to make out any immediate danger of new injury to themselves, plaintiffs lack standing and their claims must be dismissed.

## II.    PLAINTIFFS HAVE FAILED TO PROPERLY SERVE THE DEFENDANTS.

Plaintiffs repeatedly have asked this Court for expedited consideration of their claims. Yet plaintiffs have failed to satisfy even basic service requirements and a failure to do so warrants dismissal.

Rule 4(i) of the Federal Rules of Civil Procedure is the rule governing service of process on the United States, its agencies, and its officers and employees named in their official capacities. Pursuant to Rule 4(i)(1), service on the United States only can be affected by (1) delivering copies of the summons and complaint to the United States Attorney or to an Assistant United States Attorney for the district in which the action is brought or by sending copies by registered or certified mail <u>and</u> (2) by sending copies by registered or certified mail to the Attorney General. Fed. R. Civ. P. 4(i)(1)(A) & (B). Moreover, where an agency, corporation, officer or employee of the United States is sued only in an official capacity, service "is effected by serving the United States in the manner prescribed by Rule 4(i)(1) <u>and</u> by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency or corporation." Fed. R. Civ. P. 4(i)(2)(A) (emphasis added).

Plaintiffs here have not properly served the United States Attorney's Office. Nor have they sent a registered or certified copy of the summons and complaint to the Attorney General of the United States. Finally, plaintiffs have failed to serve the defendant agencies and their officers sued in their official capacities. <u>See</u> Berry Decl., ¶¶ 4 & 5, Ex. B (neither DIA nor defendant

-15-

Berry has been served); Peirce Decl., ¶ 4, Ex. A (defendant Peirce has not been served);

Declaration of Frank R. Jimenez ("Jimenez Decl."), ¶¶ 1, 4, attached hereto as Ex. J (Neither

defendant Haynes nor the Office of the Secretary of Defense has been served); Declaration of

Ronald J. Buchholz ("Buchholz Decl."), ¶¶ 3-4 attached as Ex. K (defendant Taylor has not been

served); Declaration of Patrick L. Gary ("Gary Decl."), ¶¶ 3-5, attached as Ex. L (defendant

Army has not been served). Plaintiffs' failure to properly serve the defendants provides yet

another reason for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(5).

In any event, it would be wholly inappropriate to undertake consideration of plaintiffs' claims

before service is perfected.

## CONCLUSION

    For the reasons set forth above, defendants respectfully request that the Court dismiss this

action.

DATED this April 7, 2006.

                            Respectfully submitted,

                            PETER D. KEISLER
                            Assistant Attorney General

                            KENNETH L. WAINSTEIN
                            United States Attorney

                            VINCENT M. GARVEY
                            Deputy Branch Director


                            _____/s/_____
                            KAREN K. RICHARDSON, Texas Bar #785610

-16-

Senior Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 6126
Washington, D.C.  20001
Telephone: (202) 514-3374
Facsimile: (202) 616-8460