UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ANTHONY SHAFFER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 06-271 (GK) |
| | ) | |
| v. | ) | |
| | ) | |
| DEFENSE INTELLIGENCE AGENCY, et al. | ) | (no next-scheduled Court deadline) |
| | ) | |
| Defendants. | ) | |

_____)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

    This is a case in search of a controversy. Plaintiff Shaffer[1] asserts that defendants violated the First Amendment and the Administrative Procedures Act ("APA") by denying plaintiff's request to give his private counsel access to classified information relating to ABLE DANGER, a top secret government program. But plaintiff cannot show that his attorney needs such classified access for purposes of representing him during future congressional hearings because no such hearings have been scheduled. Nor can he show why his attorney needs access to classified information for purposes of representing him during fact-finding interviews with the Department of Defense ("DoD") Office of Inspector General ("OIG") during its investigation of allegations of wrongdoing by the government relating to ABLE DANGER. The OIG has allowed plaintiff's counsel to be present at <u>all</u> interviews with plaintiff and has not required

---

[1] Mr. J.D. Smith, the other plaintiff to this action, has indicated that he consents to the voluntary dismissal of his claims pursuant to Rule 41 of the Federal Rules of Civil Procedure. See Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plfs' Opp." or "Opposition"), at 2.

plaintiff to discuss classified information. In short, plaintiff cannot establish any "injury-in-fact" that he has suffered from defendants' decision not to clear his private counsel for access to classified information. Accordingly, he has failed to demonstrate either that his claims are ripe or that he has standing to sue.

In his Opposition, plaintiff acknowledges that no congressional hearings have yet been scheduled, but attempts to downplay that fact by arguing that he has a generalized "need" for cleared counsel that is wholly independent of whether or not congressional hearings are held. Plfs' Opp. at 11. But presenting this case as a moving target for defendants and this Court does not help save plaintiff's claims from dismissal on standing and ripeness grounds. Plaintiff supposes that he needs cleared counsel so that plaintiff may share classified information with OIG investigators because, without classified testimony from Mr. Shaffer, the OIG *may* conclude from its ongoing investigation that the government did not engage in retaliation against plaintiff. Plaintiff speculates that such a conclusion by the OIG *may* compromise any claims of retaliation that he *might* bring, but has not yet raised. Plaintiff further suggests that the agency *may* take personnel actions against him. But plaintiff has no way of knowing with any certainty what information the OIG has obtained during the course of its investigation. Plaintiff also cannot predict what conclusions the OIG will ultimately reach in its investigation, nor the impact that the OIG's investigation may have on future personnel actions by the defendants. Plaintiff's speculation is insufficient to establish his standing to sue or that his claims are ripe for adjudication.

Plaintiff seeks a ruling on important constitutional questions based upon facts that have not, and may never occur. "A fundamental and longstanding principle of judicial restraint

requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them," Stillman v. Central Intelligence Agency, 319 F.3d 546, 548 (D.C. Cir. 2003) (internal quotations omitted), and plaintiff's claims would clearly "benefit from letting the question arise in some more concrete and final form." State Farm Mutual Automobile Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C. Cir. 1986). Prudential concerns, if not the complete lack of Article III standing, dictate that this Court avoid issuing what would be a mere advisory opinion on matters of constitutional concern and dismiss plaintiff Shaffer's claims as unripe and for lack of standing.

## ARGUMENT

I. **PLAINTIFF SHAFFER HAS FAILED TO SATISFY HIS BURDEN OF SHOWING THAT HE HAS STANDING OR THAT HIS CLAIMS ARE RIPE.**

Plaintiff Shaffer's Opposition speaks volumes more for what it does not say than for what it does. More than three months have passed since plaintiff alleged in his First Amended Complaint that he would suffer harm if his counsel was not immediately cleared for access to classified information for purposes of representing him at future congressional hearings. Yet, plaintiff does not state in his Opposition that he has received notice that future hearings about ABLE DANGER have been scheduled. He does not present evidence that he has been requested, much less subpoenaed, to give classified testimony or briefings under oath relating to ABLE DANGER. He does not dispute defendants' factual showing that his counsel have been allowed to be present at all interviews that the OIG has conducted with plaintiff during the course of its investigation into allegations of wrongdoing by the government relating to ABLE DANGER. Nor does plaintiff explain how he has been harmed by defendants' refusal to grant his counsel

access to classified information relating to ABLE DANGER. In fact, as shown below, nothing that plaintiff sets forth in his Opposition or his First Amended Complaint would indicate that he has standing to bring this action or that his claims are ripe for adjudication.

>   A. **Plaintiff Shaffer Cannot Show That Additional Congressional Hearings On Able Danger Have Been Scheduled Or That He Will Be Compelled To Testify On Classified Matters At Any Future Hearings.**

Plaintiff does not dispute that Congress has scheduled no future hearings on ABLE DANGER. Rather, in his Opposition, he proffers the declaration of Congressman Curt Weldon who, by his own admission, is an "outspoken" Member of Congress supporting the plaintiff. See Exhibit 8, ¶ 3 to Plfs' Opp. In his declaration, Congressman Weldon sheds no new light on Congress' intentions concerning additional hearings on ABLE DANGER. As Congressman Weldon indicated, Congress may hold additional hearings about ABLE DANGER. Id. at ¶ 4. Then again, it *might* not. Congressman Weldon "anticipates" future hearings about ABLE DANGER. Id. But he cannot, and does not purport to, speak on behalf of Congress or Committees of Congress. He does not say when or if future hearings will be held, much less which committees will hold such hearings. Congressman Weldon does not say that plaintiff has been requested, much less subpoenaed, to testify. He does not, and cannot, say that he has the power to subpoena Mr. Shaffer to compel any future testimony about ABLE DANGER.[2] Nor does he state that the classified "briefings" (not hearings) that he speculates other Members of

---

[2] Pursuant to House rules, a single member of Congress does not have the power to issue a subpoena to a witness. Rule XI, paragraph 2(m)(3)(A)(i) of the Procedures of Committees and Unfinished Business of the U.S. House of Representatives Committee on Rules (attached hereto in pertinent part as Exhibit 1) states that "a subpoena may be authorized and issued by a committee or subcommittee . . . in the conduct of an investigation or series of investigations or activities only when authorized by the committee or subcommittee, a majority being present."

Congress or their staff might enjoy are a certainty or would require plaintiff to give information "under oath" or "subject to criminal penalties pursuant to statute," the specific circumstance which plaintiff alleges would precipitate the "injury" that he alleges he would suffer by the defendants' denial of his request for cleared counsel. Id.; see also First Amended Complaint, ¶ 33 (plaintiff's "appearances before congressional committees and Government investigators are under oath or are subject to criminal penalty pursuant to statute if false or inconsistent statements are made . . . [Mr. Shaffer] could potentially face prosecution should [his] answers be held to be either false or inconsistent thereby requiring representation throughout every aspect of these matters."). With all due respect to Congressman Weldon, the information contained in his declaration does nothing more than set forth the Congressman's mere speculation that future hearings *may* be scheduled and that plaintiff *may* be called to testify at any such hearings. Such speculation is insufficient to establish plaintiff's standing to sue or the ripeness of his claims.

Moreover, even in the unlikely event that plaintiff were requested to provide classified briefings to congressional staff "*under oath*," the plaintiff's asserted need for cleared counsel to avoid making false or inconsistent statements, see Plfs' Opp. at 7, flies in the face of Supreme Court precedent. The Supreme Court has held that, even under the Sixth Amendment, witnesses are not guaranteed a right to counsel even though their testimony is given under oath and under penalty of perjury. See Conn v. Gabbert, 526 U.S. 286, 292 (1999) (noting that a grand jury witness has no constitutional right to have counsel present during the proceeding, and "none of this Court's decisions has held that such a witness has a right to have her attorney present outside the jury room."), citing United States v. Mandujano, 425 U.S. 564, 581 (1976). As the Supreme Court explained in In Re Groban, 352 U.S. 330 (1957):

> The fact that appellants were under a legal duty to speak and that their testimony might provide a basis for criminal charges against them does not mean that they had a constitutional right to the assistance of their counsel.  Appellants here are witnesses from whom information was sought as to the cause of the fire.  <u>A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel, nor can a witness before other investigatory bodies</u>.  There is no more reason to allow the presence of counsel before a Fire Marshal trying in the public interest to determine the cause of a fire.  Obviously in these situations evidence obtained may possibly lay a witness open to criminal charges.  <u>When such charges are made in a criminal proceeding, he then may demand the presence of his counsel for his defense.  Until then his protection is the privilege against self-incrimination</u>.

<u>In Re Groban</u>, 352 U.S. at 332-33 (emphasis added).  Thus, given that witnesses compelled to testify before a grand jury or other investigative bodies have no right to counsel, plaintiff's purported need to have cleared counsel to avoid giving perjured testimony during classified congressional hearings or investigative OIG interviews is less than compelling.  If plaintiff is concerned that his testimony "under oath" may subject him to charges of perjury, he has the protection of the privilege against self-incrimination; he does not need cleared counsel.

In addition, contrary to plaintiff's protestations, see Plfs' Opp. at 12, the fact that plaintiff's proposed testimony is *voluntary*, not compelled by Congress, also defeats plaintiff's claims.  If Congress does not issue a subpoena to plaintiff, it is within plaintiff's power to choose to testify or not (assuming, of course, that hearings *are* held and he is actually requested to testify).  Thus, any purported harm that plaintiff would suffer from giving classified testimony outside of the presence of his counsel is wholly within plaintiff's control.  Accordingly, Mr. Shaffer cannot show that he faces an "injury-in-fact" from the defendants' decision to refuse to clear his counsel.  In the absence of such showing of direct harm, plaintiff has no standing and his claims are not ripe.

### B. Plaintiff Shaffer Has Not Demonstrated That His Attorney Needs Access To Classified Information For Purposes Of Representing Plaintiff During OIG Interviews.

Plaintiff cannot seem to make up his mind as to the basis for his lawsuit. From its inception, this lawsuit has concerned plaintiff's assertion that he needs his private counsel to be cleared for access to classified information for purposes of representing him at future congressional hearings. However, in the absence of evidence that additional congressional hearings on ABLE DANGER have been scheduled, or that plaintiff Shaffer will be compelled to testify under oath as to classified matters, plaintiff's fall-back position is that his "request was not conditioned on the utilization of the information for participation in Congressional inquiries," but was "a general request in order to allow proper and effective evaluation of the legal and factual circumstances of Shaffer's case." Plfs' Opp. at 6. [3]

What plaintiff means by "the circumstances of Shaffer's case" is left unclear. One can surmise, however, from other statements made in the plaintiff's Opposition that his purported need for cleared counsel concerns the OIG investigation into the government's conduct relating to ABLE DANGER and his allegation that the government has retaliated against him. See Plfs' Opp. at 4; Exhs. 1 & 8 to Plfs' Opp. Plaintiff argues that he needs cleared counsel because "he had his security clearance revoked and is facing termination from his employment." See Plfs' Opp. at 14. His counsel, Mark Zaid, also suggests in his supplemental declaration filed May 30,

---

[3] Plaintiff's argument is belied by plaintiffs' counsel's written requests to the agency defendants which expressly ask that they be cleared for access to classified information for the purpose of representing plaintiffs Shaffer and Smith at Congressional hearings on ABLE DANGER. See Exhs. C, D & E to Memorandum in Support of Defendants' Motion to Dismiss ("Defs' Mem." or "Memorandum"). It was on that basis that defendants considered, and subsequently, denied the requests. See Exhs. F & G, Defs' Mem.

2006, that plaintiff's need for cleared counsel is based upon his desire to communicate classified information to the OIG investigators for the purpose of convincing them that the government was engaged in wrongdoing. See Second Declaration of Mark Zaid ("Second Zaid Decl.") at ¶ 3.

None of the reasons plaintiff proffers provide a basis for concluding that his claims are ripe or that he has standing. First, defendants have already produced evidence, undisputed by plaintiff, that the OIG investigators do not require classified information from plaintiff to complete its investigation. See Defs' Mem. at 7, Exh. I (Hortsman Decl.), ¶¶ 8-10. Nor have they denied plaintiff's counsel the opportunity to be present at all interviews with the plaintiff. Id.

Second, to the extent that plaintiff's counsel is suggesting in his Supplemental Declaration that the OIG investigators will not reach "accurate conclusions" if plaintiff does not share with them classified information, that is only Mr. Zaid's speculation. Second Zaid Decl. at ¶ 6 ("I cannot imagine the investigation can be completed, and more importantly any accurate conclusions reached, without addressing the gaping holes Shaffer can apparently fill and desires to address."). The OIG has defined the scope of its investigation of the government's actions and has determined that classified information from Mr. Shaffer is not necessary. Neither Mr. Shaffer nor Mr. Zaid know the wealth of information OIG has obtained for purposes of its investigation. They cannot say with any certainty what conclusions the OIG may reach once it completes its investigation. And they certainly cannot predict how or if the OIG's report, once it is completed, will impact plaintiff. In short, plaintiff cannot show that he has suffered a particularized injury to a cognizable interest, which is fairly traceable to the defendants' actions,

and that a favorable judicial decision will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Third, plaintiff suggests that the revocation of his security clearance for unrelated misconduct (misconduct that predated his activities with ABLE DANGER) was an act of reprisal by the government and that the prospective termination of his employment would be retaliation as well. Plfs' Opp. at 4-5. But plaintiff does not raise a retaliation claim in his First Amended Complaint.[4] As plaintiff himself admits, "all personnel actions against Shaffer have been stayed pending the conclusion of [the OIG] investigation." Id. at 14. Thus, by plaintiff's own admission, he has not suffered any harm from not having cleared counsel (even assuming that information relating to ABLE DANGER were necessary for representation of plaintiff with respect to those personnel actions).[5]

---

[4] In addition, to the extent that plaintiff bases his "need" for cleared counsel on the fact that he may challenge the Defense Intelligence Agency's revocation of his security clearance, that argument is without merit. The Supreme Court has made it clear that challenges to the Executive Branch's determination to revoke or deny a security clearance are non-justiciable because the decision to grant a security clearance is committed by law to the appropriate agency of the Executive Branch. See Department of the Navy v. Egan, 484 U.S. 518, 528 (1988) ("[i]t should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official. ").

[5] Plaintiff Shaffer also mentions on numerous occasions that he was considered for possible criminal charges under the Uniform Code of Military Justice and was appointed a military criminal defense attorney, as if this might bolster his assertion that he needs cleared counsel. See Plfs' Opp. at 4; Exhibit 1 to Plfs' Opp. (Declaration of Mark Zaid) at ¶7; Exhibit 8, (Declaration of Curt Weldon) at ¶ 5. But, based upon plaintiff's own stated version of events, the misconduct forming the basis for the "possible criminal charges" had absolutely nothing to do with ABLE DANGER, but related to allegations that plaintiff defrauded the government or misused his position in a number of ways. See Declaration of Anthony Shaffer, ¶¶ 6-14 (Exhibit 2 to Plfs' Opp.). Thus, plaintiff cannot rely on the military's past consideration of possible criminal charges relating to misconduct that did not implicate classified information as a basis for needing cleared counsel.

There is no valid reason why plaintiff's counsel must have access to classified information for purposes of the OIG investigation. Based upon these facts, he has not satisfied his burden of showing he has a need for cleared counsel or has suffered an "injury-in-fact." Plaintiff has not established that his claims are ripe or that he has standing under these circumstances.

> C. **The Defendants' Final Decision Denying Plaintiff's Request For Cleared Counsel For Purposes Of Representing Him During Congressional Hearings Does Not Establish Article III Standing Or Ripeness; Plaintiff Has Not Suffered An "Injury-In-Fact."**

In his Opposition, plaintiff argues that the denial of his counsel's request for access to classified information is a final agency action that, by itself, presents a "crystallized" controversy under the Administrative Procedures Act. Plfs' Opp. at 11. Plaintiff misses the point of prudential standing principles and the "injury-in-fact" requirement of standing and ripeness. As the D.C. Circuit pointed out in State Farm Mutual:

> "[E]ven when agency action is final and the issues presented are purely legal, a court may nonetheless properly deem a matter unfit for resolution if postponing review would provide for a more efficient examination and disposition of the issues [citations omitted]. The court, for example, might determine that 'further administrative action is needed to clarify the agency's position,' Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 940 (D.C.Cir.1986), or that the court's deliberations might benefit from letting the question arise 'in some more concrete and final form,' [quoting Eagle-Picher Industries v. E.P.A., 759 F.2d 905, 915 (D.C. Cir. 1985)]; or that resolution of the dispute is likely to prove unnecessary."

State Farm Mutual, 802 F.2d at 479.[6]

---

[6]   Plaintiff's reliance on the holding in Caplin & Drysdale v. United States, 491 U.S. 617 (1989) is misplaced. See Plfs' Opp. at 14. That case involved an attorney's challenge to a statute authorizing the forfeiture of the assets of a client, a criminal defendant. The Supreme Court found that the attorney had standing to advance the criminal defendant's Sixth Amendment rights because the attorney had a stake in the forfeited assets which would be used to pay the attorney's fees. See Caplin, 491 U.S. at 624 n. 3. In other words, if the assets were forfeited, the attorney

Plaintiff here brings a First Amendment challenge relating to his alleged need for his counsel to have access to classified information, yet he fails to identify what that "need" is based on, other than a purported need "to obtain effective legal representation . . . in general." Plfs' Opp. at 11-12. Even had he stated a cognizable First Amendment claim (which he has not), the Court would be required to balance the government's compelling interest in controlling access to classified information, see Haig v. Agee, 453 U.S. 280, 307 (1981) ("no governmental interest is more compelling than the security of the Nation"), against plaintiff's need for the classified information, a need that is unclear and undefined at this time.[7] Plaintiff asks this Court to

---

would not be paid, a sufficient "injury-in-fact" to meet Article III standing. Id. This case, on the other hand, does not involve plaintiff's counsel's standing to sue on their own behalf, but the plaintiff's standing to assert a First Amendment claim alleging an entitlement to cleared counsel. It is plaintiff who must prove an imminent "injury-in-fact" resulting from defendants' action, which he has failed to do.

[7] Although the merits of plaintiffs' First Amendment claim are not properly before this Court (and accordingly, defendants will restrain from fully addressing the merits of that claim until such time as it may be appropriate to brief those issues), the importance of this issue to the government cannot be overstated. Plaintiff asks this Court to issue an unprecedented order requiring the Executive Branch, over its objections, to clear outside counsel for access to classified information. In the myriad of cases involving classified information, no court decision has ever been upheld holding that an individual has a First Amendment right to share classified information with anyone, even counsel. Indeed, this is not the first case in which plaintiff's counsel, Mark Zaid and Roy Kreiger, have advanced an argument on behalf of their clients that they have a First Amendment right to share classified information with counsel. See Stillman, 319 F.3d at 548; M.K. v. Tenet, 99 F.Supp.2d 12, 29-30 (D.D.C. 2000) ("[t]he only factual averments which the plaintiffs have connected to their First Amendment rights are those involving the defendants' interference with the plaintiffs' disclosure of government documents to their attorneys [Roy Kreiger and Mark Zaid]. The court has found that these averments do not state a claim under the First Amendment right of access to the courts.").

    Stillman involved a former government affiliate seeking to publish classified information and alleging that he had a First Amendment right to share such information with his attorney, Mark Zaid, for purposes of Mr. Zaid's legal representation of him in his suit against the government. The D.C. Circuit disagreed, noting that, if the Government classified information properly, then an individual "simply has no first amendment right to publish it" and concluding that the district court must attempt to determine without the assistance of Mr. Zaid whether the

require the disclosure of classified information based on his speculation that he has a "generalized" need for cleared counsel, and that purported need is wholly dependent upon events that may never occur. Principles of standing and ripeness counsel heavily against deciding issues, particularly constitutional issues, see Stillman, 319 F.3d at 548, before factual events occur that would render such a decision necessary.

## II.  PLAINTIFF HAS FAILED TO PROPERLY SERVE THE DEPARTMENT OF THE ARMY.

Defendants argued in their Memorandum that plaintiffs had failed to properly serve any of the defendants. See Defs' Mem. at 15-16. Since the filing of defendants' motion, plaintiff has proceeded to serve each defendant and request waivers of service from the individual defendants, with the exception of the Department of the Army and its General Counsel, Tom Taylor. Until such service is perfected on the Department of the Army and defendant Tom Taylor, those two

---

information was properly classified. Id. at 548.  The D.C. Circuit found that the district court abused its discretion by "unnecessarily deciding that a plaintiff has a first amendment right for his attorney to receive access to classified information." Id.  Here, plaintiff Shaffer's purported "need" to share classified information with counsel is even less compelling, and more attenuated than was found in Stillman, where the plaintiff was actually involved in a lawsuit against the government involving classified information.  Plaintiff here has no immediate need for counsel, much less cleared counsel.  Moreover, Mr. Shaffer, like the plaintiff in Stillman, is subject to a secrecy agreement that he voluntarily signed as a condition of employment.  The information Mr. Shaffer wishes to share with his counsel is classified information to which he was only given access because of the non-disclosure agreement that he signed.  See M.K., 99 F.Supp.2d at 29 ("plaintiffs do not assert that they have a *free speech* right under the First Amendment to give their attorney documents to which they have access by virtue of their employment and associated security clearance.").  The Supreme Court and the D.C. Circuit have both upheld such agreements as constitutional under the First Amendment.  See Snepp v. United States, 444 U.S. 507, 510 n. 3 (1980); McGehee v. Casey, 718 F.2d 1137, 1143 (D.C. Cir. 1983).  Plaintiff Shaffer signed his non-disclosure agreement voluntarily.  He should not be heard to say now that he has First Amendment rights that render illusory his obligations to the government.

defendants are not properly part of this suit.[8]

## CONCLUSION

For the reasons set forth above and as set forth in the Memorandum in Support of Defendants' Motion to Dismiss, defendants respectfully request that defendants' motion be granted.

DATED this June 6, 2006.

          Respectfully submitted,

          PETER D. KEISLER
          Assistant Attorney General

          KENNETH L. WAINSTEIN
          United States Attorney

          VINCENT M. GARVEY
          Deputy Branch Director

          /s/
          KAREN K. RICHARDSON, Texas Bar #785610
          Senior Counsel
          U.S. Department of Justice, Civil Division
          Federal Programs Branch
          20 Massachusetts Ave., N.W., Rm 6126
          Washington, D.C.  20001
          Telephone: (202) 514-3374
          Facsimile: (202) 616-8460

---

[8] In addition, because plaintiff has only recently sent a request for waiver of service to defendants Peirce and Berry, defendant officials sued in their individual capacities, the time for those defendants to respond has not elapsed.  They, of course, have the right to file a separate Motion to Dismiss raising any and all jurisdictional defenses that they may have in this suit. For example, the individual defendants may have defenses such as lack of personal jurisdiction, lack of venue, and qualified immunity that would preclude the claims against them.