**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY SHAFFER, <u>et</u> <u>al.</u>,   ) | |
|         ) | |

```
                                 )
ANTHONY SHAFFER, et al.,         )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )    Civil Action No. 06-271 (GK)
                                 )
DEFENSE INTELLIGENCE AGENCY,     )
et al.,                          )
                                 )
          Defendants.            )
                                 )
```

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Anthony Shaffer ("Shaffer") and J.D. Smith ("Smith") bring this action against Defendants the Defense Intelligence Agency ("DIA"); the Department of Defense ("DoD"); the Department of the Army ("Army"); George Peirce, General Counsel of DIA; Robert Berry, Jr., Principal Deputy General Counsel of the DIA; William J. Haynes, II, General Counsel of the DoD; and Tom Taylor, Senior Deputy General Counsel of the Army,[1] pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the All Writs Act, 28 U.S.C. § 1651, and the First Amendment of the U.S. Constitution.  Plaintiffs seek declaratory and injunctive relief.

---

[1]  The Complaint identifies Tom Taylor as Senior Deputy General Counsel.  In its papers, the Government refers to Taylor as General Counsel of the Army.

On August 10, 2006, Plaintiffs' claims against Defendants Peirce and Berry in their individual capacities were dismissed.

This matter is before the Court on Defendants' Motion to Dismiss all remaining claims [Dkt. No. 13].  Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons set forth below, Defendants' Motion to Dismiss is **granted in part** and **denied in part**.

## I.   Background[2]

Plaintiffs Anthony Shaffer and J.D. Smith were involved in a DoD project known as "ABLE DANGER."  Plaintiff Shaffer worked on the project as a civilian employee of the DIA, and was also a Lieutenant Colonel in the U.S. Army Reserves.  Plaintiff Smith was a civilian defense contractor.  Plaintiff Smith's work on ABLE DANGER was unclassified.  Defs.' Mot., Exh. C.

ABLE DANGER was a U.S. Special Operations Command military intelligence program.  Its mission was to develop an Information Operations Campaign Plan against transnational terrorism.

---

[2]  For purposes of ruling on a motion to dismiss for lack of subject matter jurisdiction, the factual allegations of the complaint are generally presumed to be true.  See Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000).  Although a court may resolve a motion to dismiss for lack of subject matter jurisdiction "on the complaint standing alone," a court may also consider materials outside the pleadings.  Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).  Therefore, the facts set forth herein are taken from the First Amended Complaint, unless otherwise noted.

At an unspecified date prior to September 11, 2001, ABLE DANGER identified four individuals as possible members of an Al Qaeda cell that was linked to the 1993 bombing of the World Trade Center.  One of these four individuals was Mohamed Atta.

By the spring of 2001, information collected as part of the ABLE DANGER program was destroyed, and the program was shut down. The DIA destroyed files maintained by Plaintiff Shaffer in his DIA work space, including some files related to ABLE DANGER.

On September 11, 2001, four commercial planes were hijacked. Two planes were flown into the World Trade Center towers, one was flown into the Pentagon, and one crashed in Pennsylvania.  In total, nearly 3,000 people were killed.  The hijackers included Mohamed Atta and the three other individuals identified by ABLE DANGER.

In the wake of the events of September 11, 2001, the 9/11 Commission ("Commission") was formed.  In October 2003, Plaintiff Shaffer discussed ABLE DANGER with Philip Zelikow, the Commission's Executive Director, when both were in Bagram, Afghanistan.[3]  He informed Zelikow that ABLE DANGER had identified individuals who were later learned to be participants in the September 11 hijacking, including Atta.

---

[3]  The parties do not indicate why either person was in Bagram at that time.

In response, Zelikow told Plaintiff Shaffer that this information was "very important," provided Plaintiff Shaffer with his business card, and asked him to contact the Commission upon his return to the United States. When Plaintiff Shaffer returned to the United States in January 2004, he contacted the Commission. The Commission informed Shaffer that it possessed all the information on ABLE DANGER that it needed.

The Commission also received information about ABLE DANGER from Navy Captain Scott Phillpott. In July 2004, Phillpott met with staff members from the Commission and informed them that ABLE DANGER had identified some of the hijackers prior to September 11, 2001.

Despite Plaintiff Shaffer's conversation with Zelikow and Phillpott's meeting with Commission staff, the Commission concluded that U.S. intelligence agencies had not identified Atta as a potential terrorist prior to September 11. Two of the members of the Commission claim that they received no information about ABLE DANGER. The Commission's final report does not mention ABLE DANGER.

After the Commission released its final report, members of the media inquired about the Commission's investigation of ABLE DANGER. In response, Thomas Kean, the Commission's Chair, and Lee Hamilton, its Vice Chair, issued a statement claiming that the Commission had been aware of ABLE DANGER but that it had no information that ABLE

DANGER identified any of the hijackers prior to September 11, 2001. The statement also confirmed that Phillpott had met with Commission staff but noted that this meeting had occurred only days before the final report was scheduled to be released.

Since the spring of 2005, Plaintiff Shaffer has briefed Congressional committees and their staff members on ABLE DANGER. He has also described retaliation that he suffered from the DIA because of his discussions about ABLE DANGER.

In a letter dated August 30, 2005, Plaintiff Shaffer's counsel, Mark Zaid, requested that Defendants permit him and his law partner, Roy Krieger, to discuss classified information regarding ABLE DANGER with their clients.  In a letter dated August 31, 2005, counsel repeated the same request with regard to an invitation from the Senate Judiciary Committee to present testimony.

In a letter dated September 16, 2005, Defendants rejected the requests.  Pls.' Opp'n, Exh. 5.  The letter stated that Plaintiff Shaffer had not demonstrated that access to classified information was "necessary" for counsel to "adequately" represent his client. Id.  It also stated that due to counsel's "abusive" past behavior (including conduct described as a "'Rambo' litigation tactic" by one judge in this District, Assassination Archives & Research Ctr. v. CIA, 48 F. Supp. 2d 1, 10 (D.D.C. 1999) (Lamberth, J.)), allowing him to access classified information "would not represent

an acceptable security risk." Id.  Based on these two rationales, the letter concluded that denying Plaintiffs' counsel's request would be consistent with DoD regulations.  Id.

Plaintiffs Shaffer and Smith were scheduled to testify about ABLE DANGER before the Senate Judiciary Committee in September 2005.  Shaffer submitted his proposed testimony to the DoD for classification review.  The DoD never responded, but Defendants claimed that all information was classified and refused to permit the testimony.  On September 21, 2005, Plaintiffs' counsel testified in lieu of Plaintiffs.

On an unspecified date prior to this testimony, the DIA revoked Plaintiff Shaffer's security clearance.  It alleged that he had engaged in criminal conduct and that he was not credible.

In October 2005, the DoD Office of Inspector General ("OIG") initiated an investigation into two allegations: (1) that the government improperly handled information gathered under ABLE DANGER, and (2) that the DIA retaliated against Plaintiff Shaffer. Defs.' Mot., Exh. I.

Between October 2005 and April 2006, OIG investigators conducted more than seventy interviews.  Id. Plaintiff Shaffer was interviewed twice, both times in the presence of his counsel.  Id. Neither interview involved classified information.  Id. Plaintiff Smith was interviewed once.  No classified information was discussed, and his counsel was present at the interview.  Id.  The

supervisor of the investigation has stated that any future interviews with Plaintiffs will not discuss classified information. Id.

In a letter dated February 2, 2006, counsel again requested that Plaintiffs be permitted to share classified information with counsel. In a letter dated February 14, 2006, Defendants again rejected the request.

On February 15, 2006, Plaintiffs testified before two subcommittees of the House Armed Services Committee. The hearing included an open session and a closed session. During the open session, Plaintiff Shaffer noted that he would not be permitted counsel in the closed session. He stated that testifying without counsel would place him in legal jeopardy. Prior to the start of the closed hearing, Plaintiff Smith was informed that he would not be permitted to testify during the closed session. Neither Plaintiff attended the closed portion of the hearing.

## II. Standard of Review

To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint." Id. at 1969.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

## III. Analysis

### A. Defendants Department of the Army and Tom Taylor Were Not Properly Served.

In their Motion, two Defendants, the Army and its Senior Deputy General Counsel Tom Taylor, allege that they were not properly served. Defendants filed their Motion on April 7, 2006. After Defendants filed their Motion and before Plaintiffs filed their Opposition on May 12, 2006, Plaintiffs served several Defendants. See Pls.' Reply at 12. However, Plaintiff has offered no proof, and the official docket contains no proof, that either the Army or Senior Deputy General Counsel Taylor were ever served, no less served within the 120 days from the filing of the Complaint allowed under Fed. R. Civ. P. 4(m).

Consequently, Defendants Army and Taylor will be **dismissed.**

**B.**   **Plaintiff Shaffer's Claims Regarding Future Congressional Testimony Are Not Ripe; Neither the Standing Doctrine Nor the Ripeness Doctrine Bars Him from Pursuing His Claims with Respect to the OIG Investigation and the Attorney-Client Relationship.**

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984).  Because standing and ripeness are two elements of the case or controversy requirement, a court does not have subject matter jurisdiction if a plaintiff lacks standing or if the case is not ripe.  See In re Navy Chaplaincy, 534 F.3d 756, 759 (D.C. Cir. 2008) ("One of the controlling elements in the definition of a case or controversy under Article III is standing.") (quoting Hein v. Freedom From Religion Found., Inc., __ U.S. __ , 127 S.Ct. 2553, 2562, 168 L.Ed.2d 424 (2007); see Boston & Maine Corp. v. Surface Transp. Bd., 364 F.3d 318, 319 (D.C. Cir. 2004) (when a plaintiff lacks standing, the court lacks subject matter jurisdiction); see Exxon Mobil Corp. v. Fed. Energy Regulatory Comm'n, 501 F.3d 204, 207 (D.C. Cir. 2007) (ripeness is a question of subject matter jurisdiction).

To establish standing, a plaintiff must prove that she has suffered an "injury in fact," that the injury is "fairly traceable to the challenged action of the defendant," and that it is "likely" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 560-61 (1992) (internal punctuation and citations omitted).

A plaintiff demonstrates that he suffered an "injury in fact" when he shows that he suffered "an invasion of a legally protected interest" that was both "concrete and particularized" and "actual or imminent." Id. at 560 (internal citations omitted).  An injury that is "conjectural or hypothetical," "remote," or "speculative" is not sufficient.  Id. (internal punctuation and citations omitted); see also In re Navy Chaplaincy, 534 F.3d at 759-60.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967).  A case is not ripe for adjudication when it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).

In determining whether a case is ripe, a court must weigh two considerations: the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Exxon Mobil Corp., 501 F.3d at 208 (quoting Abbott Labs., 387 U.S. at 149).  The first prong requires a court to consider "any institutional interests that either the court or the agency may have for postponing review." State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C. Cir. 1986).  A court has a "legitimate interest in avoiding adjudication of speculative controversies." Id. An issue may be fit for judicial review if it

10

is a "purely legal one." Id.; see also Cement Kiln Recycling Coal. v. EPA, 493 F.3d 207, 215 (D.C. Cir. 2007) (purely legal questions are "presumptively reviewable"). However, even some purely legal questions may not satisfy the ripeness test "if postponing review would provide for a more efficient examination and disposition of the issues." State Farm Mut. Auto. Ins. Co., 802 F.2d at 479.

The second prong of the ripeness doctrine requires a court to consider whether delaying judicial review would cause the plaintiff to suffer a "hardship" that is "immediate, direct, and significant." Id. at 480. For example, a company that must undertake costly changes in response to impending regulation may satisfy this "hardship" prong. Id. However, if a plaintiff has alleged a "mere potential for future injury" or "if there are too many 'ifs' in the asserted causal chain," then the case is not ripe. Id.

It is important to emphasize that at this point in the proceedings, the Court is not addressing the merits of Plaintiff Shaffer's claims. See In re Navy Chaplaincy, 534 F.3d at 760 ("In reviewing the standing question, we must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.") (internal quotation marks and citations omitted). Under the standing and ripeness inquiries, the hurdle that Plaintiff Shaffer must clear is a low one. See Ross v.

11

Bank of Am., N.A., 524 F.3d 217 (2d Cir. 2008) ("Injury in fact is a low threshold, which we have held 'need not be capable of sustaining a valid cause of action,' but 'may simply be the fear or anxiety of future harm.'") (citations omitted).

In this case, Plaintiffs have requested injunctive and declaratory relief that would permit them to discuss classified information regarding ABLE DANGER with their counsel.  They claim that they possess a First Amendment constitutional right "to share classified or potentially classified information with . . . cleared counsel in order to obtain effective legal representation that would permit adequate guidance and analysis" on relevant legal claims.  Pls' Opp'n at 11-12.  They do not seek relief for past harm.  Defs.' Mot at 10 n.4; see generally Pls.' Opp'n (never contradicting Defendants' assertion that Plaintiffs seek only prospective relief); see also Compl. at 12 (requesting only injunctive and declaratory relief).

The First Amended Complaint does not distinguish between the claims of the two Plaintiffs.  See Compl. at 12 (requesting declaratory and injunctive relief for "plaintiffs" and never requesting a form of relief for one plaintiff not requested for the other). However, Defendants' Motion raises specific arguments with respect to Plaintiff Smith.  It argues that because he did not work on the classified elements of ABLE DANGER, "there is no possible justification" for giving his attorney access to classified

information relating to the program.  Defs.' Mot. at 12.  In his
Opposition, Plaintiff Smith "consents to the voluntary dismissal of
his claims pursuant to Rule 41 of the Federal Rules of Civil
Procedure."  Pls.' Opp'n at 1 n.2.  Accordingly, all of Plaintiff
Smith's claims are **dismissed**.

With respect to Plaintiff Shaffer's claims, he mentions three
venues in which sharing classified information with his attorneys
is necessary: (1) future Congressional proceedings, (2) the OIG
investigation, and (3) the attorney-client relationship.

### 1. Congressional Hearings

With regard to future Congressional hearings, Defendants argue
that Plaintiff Shaffer has not suffered an injury-in-fact and that
his claim is not ripe for adjudication for three reasons.  First,
no Congressional hearings are currently scheduled, and Plaintiff
Shaffer has provided no evidence that they will occur in the
future.  Second, Plaintiff Shaffer has not established that he will
be required to testify at any Congressional hearings even if they
are scheduled in the future.   Third, even if he is required to
testify, he has not shown that he will be required to discuss
classified information during such testimony.  Defs.' Mot. at 13.

In response, Plaintiff Shaffer claims that Congress "remains
very involved" with its inquiry into ABLE DANGER.  Pls.' Opp'n at
12.  For support, he cites the Declaration of Congressman Curt
Weldon.  Id. at 13.  In the Declaration, Congressman Weldon stated

13

that he "fully anticipate[s] that additional hearings will be scheduled" and that certain unspecified Members of Congress "wish" to receive a briefing from Plaintiff Shaffer in a "classified environment." Pls.' Opp'n, Exh. 8 at ¶ 4. He also expressed concern that Congress may schedule testimony with "very little notice" and that this would "likely" prevent "timely" judicial action. Id.

Plaintiff Shaffer has failed to present any evidence other than pure speculation about the possibility of future Congressional hearings. As Defendants correctly argue, no hearings are scheduled, Plaintiff Shaffer's presence has not been requested, and it is uncertain whether classified testimony will be necessary in the event that Congress does require his testimony.[4]

Plaintiff Shaffer has also failed to demonstrate that delay would impose a hardship on him. His claim is based on the occurrence of several "ifs": he speculates about possible hearings at an unknown point in the future that may or may not require discussion of classified information. He also speculates that a court could not act quickly enough to address his concerns, even though he offered no evidence to suggest that a court would be unable to resolve the question on short notice, such as on a motion

---

[4]   Plaintiff's Opposition was filed on May 12, 2006. It should be noted no supplemental information has been submitted since that date regarding any future Congressional hearings about ABLE DANGER.

14

for temporary restraining order,[5] in the event that the type of hearings he anticipates are indeed scheduled.  In sum, there is no concrete evidence that he will suffer any hardship if his claims are not adjudicated at this time.  Therefore, Plaintiff Shaffer's claims relating to his right to representation at Congressional hearings are not yet ripe.

### 2.  OIG Investigation

Defendants also argue that Plaintiff Shaffer does not possess standing for his claims related to the OIG investigation because he has not alleged that he suffered a legally cognizable injury.  They have submitted a declaration from the supervisor of the OIG investigation stating that the investigation did not require Plaintiff Shaffer to discuss classified information.  Defs.' Mot., Exh. I.  In addition, counsel were permitted to be present each time Plaintiffs were interviewed.  Id.

In response, Plaintiff Shaffer acknowledges that although the OIG investigation has not yet required discussion of classified material, permitting his attorney access to classified information would have enabled him to go "into more detail on his involvement and knowledge of ABLE DANGER activities and DIA retaliation." Pls.' Opp'n at 14 n.3.

---

[5]  That is precisely the procedure Plaintiff Shaffer followed when he filed his request for a temporary restraining order on February 15, 2006.

The OIG investigation involves two inquiries: first, it is investigating Plaintiff Shaffer's allegations of reprisal, and second, it is investigating whether government officials acted "improperly" in handling information from ABLE DANGER. Defs.' Mot., Exh. I. It is true that we do not know, on this record, whether Defendants will or will not request another interview with Plaintiff Shaffer or whether they will or will not ask him to discuss classified information. However, what is clear is that the investigation itself and its report and conclusions may well have a significant impact on his employment status and his livelihood.

Defendants contend that because Plaintiff conceded that "all personnel actions against Shaffer have been stayed pending the conclusion" of the OIG investigation, Pls.' Opp'n at 14, he cannot survive the standing and ripeness inquiries. Although Defendants contend that the stay indicates that he has suffered no injury, they have misidentified the relevant injury in this case. The question is not whether Plaintiff Shaffer could be subject to an adverse personnel decision at some point in the future, it is whether he suffers an injury in the present by virtue of being denied effective legal representation.

Despite the existence of the stay until completion of the OIG proceedings, the evidence produced and conclusions reached in those proceedings may greatly impact whatever employment determinations are eventually made. For this reason, Plaintiff Shaffer has a

compelling interest in obtaining the most fully informed and knowledgeable representation possible during the OIG investigation.

A fully candid and comprehensive discussion with his attorney, one that included discussion of the classified aspects of his work on ABLE DANGER, might present opportunities for alternative advocacy options, might open up possibilities for new claims or counter-claims, and might justify additional claims of wrongdoing by Defendants.

If Defendants were correct, Plaintiff would be forced to wait until conclusion of the investigation to litigate his employment-related claims.  At that point, he may already have lost his job and reputation.  Failure to present his strongest possible case during the investigation may cause him irreparable harm. Accordingly, delaying judicial resolution of his claim could cause Plaintiff Shaffer immediate hardship.

For these reasons, Plaintiff Shaffer has alleged, with respect to the OIG proceedings, that he has and will continue to suffer actual, concrete injury-in-fact because of the limitations placed on his consultation with his attorney, and therefore he has standing and his claims are ripe for adjudication.

### 3.  The Attorney-Client Relationship

Finally, Plantiff Shaffer alleges that his First Amendment right to discuss classified information with his attorney does not rest "solely" on the Congressional and OIG proceedings.  Pls.'

17

Opp'n at 11.  Instead, he argues that his claim has a "scope that is far broader than defendants imply." <u>Id.</u>  He argues that his claim seeks to "strengthen, and protect from intrusion, the entire attorney-client relationship." <u>Id.</u> at 12.

In response, Defendants contend that ripeness and standing principles bar judicial resolution of Plaintiff Shaffer's claims with respect to the "entire" attorney-client relationship. Defendants contend that "Plaintiff seeks a ruling on important constitutional questions based upon facts that have not, and may never occur." Defs.' Reply at 2.  They also argue that Plaintiff Shaffer has not identified "his alleged need for his counsel to have access to classified information." <u>Id.</u> at 11.

Plaintiff Shaffer presents several reasons that he "continues to face legal peril at the hands of the defendants." <u>Id.</u> at 14. His security clearance was revoked. <u>Id.</u>  He may be fired. <u>Id.</u>  He "may or may not" possess whistleblower rights because of the possibility that the government will take adverse employment action against him. <u>Id.</u>  He "holds potential claims against the U.S. government under the Constitution and various regulations/statutes." <u>Id.</u>  Finally, he is unable to "receive sound advice" or "speak freely" with his attorneys. <u>Id.</u> at 19.

Several cases cited by Plaintiff Shaffer underscore the importance of the attorney-client relationship. <u>See, e.g.</u>, <u>Caplin & Drysdale v. United States</u>, 491 U.S. 617 (1989); <u>Jacobs v.</u>

18

Schiffer, 204 F.3d 259 (D.C. Cir. 2000).  These cases affirm the First Amendment right to share information with an attorney when such sharing is necessary for an attorney to advise his client of his rights.

As is true of his claims regarding the OIG investigation, Plaintiff Shaffer has demonstrated that his claims are ripe for adjudication and that he has suffered an actual, concrete injury-in-fact sufficient to confer standing.  Plaintiff Shaffer fears that he may be fired, and he is contemplating his options for seeking the protection of whistleblower statutes.  His statement that he is considering "potential claims" reflects his desire to understand the full panoply of legal options available to him.

Evaluating, investigating, and litigating these rights depends upon open and frank conversations between Plaintiff Shaffer and his attorney.  See Martin v. Lauer, 686 F.2d 24, 32 (D.C. Cir. 1982) ("Appellants' interest in speaking freely with their attorneys is interwoven with their right to effective assistance of counsel."). As the Supreme Court stated in Upjohn Co. v. United States, 449 U.S. 383, 390-91 (1981), "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."  When that first step is compromised, a plaintiff suffers a concrete injury.

Furthermore, without knowing all that his client, and the Defendants, know, Plaintiff Shaffer's counsel cannot be prepared to

adequately represent his client's interests.   In summary, when Plaintiff Shaffer is deprived of the ability to convey all his knowledge to his attorney, he suffers an actual, concrete injury sufficient to confer standing, and his claims become ripe for adjudication.

## IV.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is **granted** with respect to all of Plaintiff Smith's claims, and with respect to the Department of the Army and Tom Taylor.   For Plaintiff Shaffer's claims, the Motion is granted with respect to representation at Congressional hearings and **denied** with respect to the OIG proceedings and protection of the attorney-client relationship.   An Order shall accompany this Memorandum Opinion.


February 24, 2009                          /s/_____
                                           Gladys Kessler
                                           United States District Judge

**Copies via ECF to all counsel of record**